MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, California  94111-3823
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

APALLA U. CHOPRA (S.B. #163207)
achopra@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California  90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

Attorneys for Defendant
Occidental College

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN J. LINDER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCCIDENTAL COLLEGE,<br><br>Defendant. | Case No. 2:20-cv-08481-JFW-RAO<br><br>**DEFENDANT OCCIDENTAL COLLEGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Judge:  Hon. John F. Walter<br>Courtroom:  7A<br>Hearing Date: November 16, 2020<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 3

    A.    Occidental's Catalog ............................................................. 3

    B.    The Global Coronavirus Pandemic and Occidental's Transition to Virtual Instruction and Services ....................... 4

ARGUMENT ...................................................................................... 5

    A.    The Court Should Reject Plaintiff's Attempt to Second-Guess Occidental's Decisions About Its Courses and Programs ............ 6

    B.    Plaintiff's Contract Claim Fails. .......................................... 8

        1.    Plaintiff Fails to Plead Adequately the Terms of the Contract That Occidental Allegedly Breached. ................ 9

        2.    The Contract on Which the Complaint Is Based Expressly Reserves Occidental's Right to Modify Its Programs. ......... 12

    C.    Plaintiff's Unjust Enrichment And Conversion Claims Fail. ......... 13

        1.    Plaintiff Cannot Assert Claims for Unjust Enrichment and Conversion Predicated on a Breach of Contract. ............. 13

        2.    Plaintiff's Conversion Claim Also Fails for Additional Reasons. .................................................................. 15

    D.    Plaintiff Lacks Standing to Assert the Claims Alleged. ............. 16

CONCLUSION ................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Antonelli Coll.*,
304 F. Supp. 3d 656 (S.D. Ohio 2018) .................................................. 6

*Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*,
2015 WL 12860470 (C.D. Cal. Oct. 29, 2015) ..................................... 14

*Apffel v. Huddleston*,
50 F. Supp. 2d 1129 (D. Utah 1999) .................................................. 17

*Atwood v. S. Cal. Ice Co.*,
63 Cal. App. 343 (1923) ...................................................................... 16

*Balisteri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ................................................................ 5

*Barneby v. New England Sch. of Montessori, LLC*,
2016 WL 3768928 (Sup. Ct. Conn. 2016) ............................................ 6

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
435 U.S. 78 (1978) ................................................................................ 7

*Chong v. Ne. Univ.*,
__ F. Supp. 3d __, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) .... 10, 14

*Colodney v. Continuum Health Partners, Inc.*,
2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) ....................................... 13

*Constr. Indus. Ass'n of Sonoma Cty. v. City of Petaluma*,
522 F.2d 897 (9th Cir. 1975) .............................................................. 16

*Dasrath v. Ross Univ. Sch. of Med.*,
2008 WL 11438041 (E.D.N.Y. Aug. 06, 2008) .................................. 12

*De Havilland v. FX Networks, LLC*,
21 Cal. App. 5th 845 (2018) ............................................................... 14

*Doe v. Univ. of the S.*,
687 F. Supp. 2d 744 (E.D. Tenn. 2009) .............................................. 17

*Doe v. Vanderbilt Univ.*,
2019 WL 4748310 (M.D. Tenn. Sept. 30, 2019) ................................ 12

*Freedline v. O Organics LLC*,
2020 WL 1643697 (N.D. Cal. Mar. 31, 2020) .................................... 14

*Gibson v. Walden Univ., LLC*,
66 F. Supp. 3d 1322 (2014) ................................................................ 12

*Gillis v. Principia Corp.*,
832 F.3d 865 (8th Cir. 2016) ................................................................ 6

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Glass v. Hillsboro Sch. Dist. 1J*,
142 F. Supp. 2d 1286 (D. Or. 2001) ....................................................... 17

*Gourdine v. Felician Coll.*,
2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15, 2006) ......................... 13

*Harris v. Time, Inc.*,
191 Cal. App. 3d 449 (1987) ............................................................... 10

*In re Bailey*,
197 F.3d 997 (9th Cir. 1999) ............................................................. 15

*In re Iphone 4S Consumer Litig.*,
2014 WL 589388 (N.D. Cal. Feb. 14, 2014), *aff'd*, 637 F. App'x
414 (9th Cir. 2016) ....................................................................... 11

*Jamieson v. Vatterott Educ. Ctrs., Inc.*,
259 F.R.D. 520 (D. Kan. 2009) ............................................................. 7

*Jogani v. Superior Court*,
165 Cal. App. 4th 901 (2008) ............................................................. 14

*Kashmiri v. Regents of Univ. of Cal.*,
156 Cal. App. 4th 809 (2007) ............................................................. 12

*Kemper v. Cal. State Univ., Sacramento*,
2017 WL 3226846 (E.D. Cal. July 31, 2017) ........................................... 9, 10

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ........................................................... 13

*Levine v. Blue Shield of Cal.*,
189 Cal. App. 4th 1117 (2010) ........................................................... 14

*Long v. Hewlett-Packard Co.*,
2007 WL 2994812 (N.D. Cal. July 27, 2007) ............................................. 11

*McCormick v. Dresdale*,
2010 WL 1740853 (D.R.I. Apr. 28, 2010) ................................................. 17

*Miller v. Loyola Univ. of New Orleans*,
829 So. 2d 1057 (La. Ct. App. 2002) ..................................................... 14

*Neelon v. Krueger*,
2015 WL 4647931 (D. Mass. Aug. 5, 2015) ................................................ 15

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 2007) ............................................................. 13

*Paulsen v. Golden Gate Univ.*,
25 Cal.3d 803 (1979) ...................................................................... 7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP,*
150 Cal. App. 4th 384 (2007) ........................................................ 15, 16

*Peter W. v. San Francisco Unified Sch. Dist.,*
60 Cal. App. 3d 814 (1976) ................................................................. 8

*Raiser v. Ventura Coll. of Law,*
488 Fed. App'x 219 (9th Cir. 2012) ...................................................... 10

*Ross v. Creighton Univ.,*
957 F.2d 410 (7th Cir. 1992) ........................................................ 6, 7, 8

*Runge v. Sanford,*
2009 WL 9083917 (D.S.C. Feb. 25, 2009) ............................................. 17

*Searle v. Regents of Univ. of Cal.,*
23 Cal. App. 3d 448 (1972) ............................................................... 13

*Sinai Mem'l Chapel v. Dudler,*
231 Cal. App. 3d 190 (1991) ............................................................. 11

*Smith v. Alameda Cty. Soc. Servs. Agency,*
90 Cal. App. 3d 929 (1979) ............................................................. 6, 7

*Sonoiki v. Harvard Univ.,*
2020 WL 3416516 (D. Mass. June 22, 2020), *appeal docketed* No.
20-1689 (1st Cir. July 16, 2020) ......................................................... 15

*Sotelo v. Rawlings Sporting Goods Co.,*
2019 WL 4392528 (C.D. Cal. May 8, 2019) ........................................... 14

*Spokeo, Inc. v. Robins ("Spokeo I"),*
136 S. Ct. 1540 (2016) ................................................................... 16

*Spy Optic, Inc. v. Alibaba.com, Inc.,*
163 F. Supp. 3d 755 (C.D. Cal. 2015) .................................................... 3

*Summit Tech., Inc. v. High-Line Medical Instruments Co.,*
922 F. Supp. 299 (C.D. Cal. 1996) ...................................................... 3, 5

*Swartz v. KPMG LLP,*
476 F.3d 756 (9th Cir. 2007) ............................................................. 12

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
137 S. Ct. 1645 (2017) ................................................................... 16

*Villard v. Capella Univ.,*
2017 WL 9253388 (M.D. Fla. Dec. 21, 2017), *adopted by* 2018 WL
2011433 (M.D. Fla. Apr. 30, 2018) ....................................................... 9

*Vu v. Cal. Commerce Club, Inc.,*
58 Cal. App. 4th 229 (1997) .............................................................. 15

iv

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Western Mining Council v. Watt,*
643 F.2d 618 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981) ........................5

*Wright v. Capella Univ., Inc.,*
378 F. Supp. 3d 760 (D. Minn. 2019) ........................14

*Wynne Sys., Inc. v. Mobile Storage Grp., Inc.,*
2010 WL 11595726 (C.D. Cal. May 5, 2010) ........................13

*Zukle v. Regents of Univ. of Cal.,*
166 F.3d 1041 (9th Cir.1999) ........................7

*Zumbrun v. Univ. of S. Cal.,*
25 Cal. App. 3d 1 (1972) ........................passim

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS, 2:20-CV-08481-JFW-RAO

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), Defendant Occidental College ("Occidental" or the "College") submits this Memorandum in support of its Motion to Dismiss Plaintiff Steven Lindner's ("Plaintiff") Complaint.

## INTRODUCTION

Like nearly every college and university in the United States, in March 2020, Occidental made the difficult decision to transition to remote instruction to protect the health of students, faculty and staff during the COVID-19 global pandemic. Since then, the College has dedicated substantial resources to providing high-quality and accessible remote instruction, while working toward the day when all members of the Occidental community will be able to return to campus safely.

Plaintiff in this case is not an Occidental student and has never attended the school.  Instead, he is the parent of a student who was enrolled during the Spring 2020 when the pandemic began and who decided to re-enroll (and pay tuition and fees) for the Fall 2020 semester knowing that all or most instruction at Occidental would continue to be remote.  Plaintiff does not contend that his daughter failed to earn credits towards her degree or that she was unable to take any particular class or course of study.  Instead, Plaintiff alleges—on behalf of all "people who paid tuition and/or fees for the Spring 2020 Semester at Occidental," Compl. ¶ 25—that he is entitled to a tuition refund because Occidental obeyed the health directives from state and local authorities and transitioned to remote instruction.

Occidental shares Plaintiff's frustration with the constraints that the pandemic has imposed on the Occidental community.  But while Plaintiff's disappointment is justified, his legal claims are not.  Occidental's decision to move to remote instruction in the face of an unprecedented public health crisis was well within its discretion under California law and the contractual materials referenced in the Complaint.  The Complaint should be dismissed with prejudice for four independent reasons.

1    *First*, all of Plaintiff's claims are based on the theory that he is owed money

2    because the quality of the remote instruction that Occidental provided is allegedly

3    inferior to in-person instruction.  But nearly every state—including California—

4    categorically rejects those kinds of claims, whether framed in contract or tort.

5    Occidental has (and, indeed, *must* have) the authority to modify its academic

6    programs and services to adapt to unforeseeable circumstances, and must be able to

7    do so without fear of having its judgments second-guessed in subsequent litigation.

8        If Plaintiff is allowed to proceed with his claims, every decision that a

9    student (or his parent) believes negatively affects the quality of his education could

10   be the subject of a lawsuit.  That is why so-called "educational malpractice" claims

11   have been routinely rejected by courts around the country.

12        *Second*, Plaintiff's contract claim fails for the independent reason that

13   Occidental never made a promise—contractual or otherwise—to provide in-person

14   education to all students and under all possible circumstances.  Plaintiff identifies

15   no such promise, which is one reason his contract claim fails.  But a second and

16   more fundamental reason is that the contractual materials on which the Complaint

17   relies (and that govern Occidental's relationship with its students) expressly afford

18   the College authority to alter academic programs and services.  For example, 2019-

19   2020 Occidental College Catalog ("2019 Catalog"), which was in effect during the

20   Spring 2020 Semester, "reserves [to Occidental] the right to change fees, modify its

21   services, or change its program should economic conditions or national emergency

22   make it necessary to do so."  Ex. A[1]; RJN No. 1.  That provision mirrors the broad

23   discretion already afforded colleges by California law.  These contractual and legal

24   grants of discretion foreclose any suggestion that Occidental promised in-person

25

26   _____

     [1] All exhibits are attached to the accompanying Declaration of Matthew D. Powers
27   in Support of Occidental's Request for Judicial Notice ("RJN").  To be clear, the
     language quoted here ("national emergency") was in place in 2019 (and in
28   Occidental Catalogs from several earlier years) *and pre-dates the COVID-19
     pandemic*.

1  education no matter what.

2      *Third*, Plaintiff's unjust enrichment and conversion claims fail as a matter of

3  law for several reasons, and claims cannot proceed when, as here, the parties'

4  relationship is governed by contract and plaintiffs seek only damages from a

5  purported breach of that contract.

6      *Finally*, Plaintiff lacks standing to assert his claims against Occidental

7  because he concedes that it was his daughter, not him, who was purportedly injured

8  by Occidental's transition to distance learning.

9      For these reasons and those described in greater detail below, the Complaint

10  should be dismissed with prejudice.

11                              **BACKGROUND**

12      The following are relevant facts alleged in the Complaint and accepted as

13  true for purposes of this motion, *Summit Tech., Inc. v. High-Line Medical*

14  *Instruments Co.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996), or "material which is . . .

15  relied upon by the [C]omplaint . . . [or] in the public record." *Spy Optic, Inc. v.*

16  *Alibaba.com, Inc.*, 163 F. Supp. 3d 755, 761-62 (C.D. Cal. 2015).

17      **A.    Occidental's Catalog**

18      "The basic legal relation between a student and a private university or college

19  is contractual in nature.  The catalogs, bulletins, circulars, and regulations of the

20  institution made available to the matriculant become a part of the contract."

21  *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (1972).  Here, Occidental's 2019

22  Catalog sets forth the terms of the contract between Occidental and its students

23  during the Spring 2020 semester—and nothing in that Catalog conditions tuition or

24  fees on the provision of in-person instruction.  *See id.  See* Ex. A; RJN No. 1.  To

25  the contrary, Occidental expressly reserved the right, in the Tuition and Fees

26  section, "to change fees, modify its services, or change its program should

27  economic conditions or national emergency make it necessary to do so."  Ex. A at

28  4.  The cover of the 2019 Catalog likewise specifies that "[f]ees, tuition, programs,

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS, 2:20-CV-08481-JFW-RAO

courses, course content, instructors, and regulations are subject to change without notice." *Id.* at 3.

**B.      The Global Coronavirus Pandemic and Occidental's Transition to Virtual Instruction and Services**

On March 4, 2020, California Governor Gavin Newsom declared a state of emergency in response to the spread of COVID-19.  Ex. B ("Proclamation of a State of Emergency"); RJN No. 2.  About a week later, Occidental announced that the College would transition to virtual instruction on March 23, 2020 (the first day back from spring break) to protect the health and safety of the Occidental community.  Compl. ¶ 3; Ex. C; RJN No. 3.  The College's announcement explained that "[c]lasses w[ould] continue to the fullest extent possible, albeit online, so that students c[ould] continue their coursework and make progress towards graduation requirements" and that "[a]ll administrative and support functions w[ould] continue to operate."  Ex. C.

On March 19, 2020, Governor Newsom issued an emergency order directing all individuals to stay at home except as needed to maintain critical infrastructure sectors.  Ex. D ("Exec. Order N-33-20"); RJN No. 4.  That same day, Los Angeles Mayor Eric Garcetti issued a "Safer at Home" order, which specified that colleges could resume operations "for purposes of facilitating distance learning or performing essential functions provided that social distancing of six-feet per person is maintained to the greatest extent possible."  Ex. E ("Safer at Home Pub. Order"); RJN No. 5.  Consistent with these orders, Occidental transitioned to remote instruction for the remainder of the Spring 2020 Semester.

Occidental refunded $3,519.54 to the account of Plaintiff's daughter due to its closure of student residences.  Compl. ¶ 12.  Nevertheless, on July 6, 2020—after Plaintiff's daughter completed and received full credit for the Spring semester—Plaintiff commenced this putative class action seeking an additional refund because the College transitioned to remote instruction.  *See id.* ¶¶ 7 & 12.

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS, 2:20-CV-08481-JFW-RAO

1     On July 15, 2020, Occidental announced that remote instruction would

2  continue through the Fall 2020 semester.  Ex. F. ("*Updated Plans for Fall 2020*");

3  RJN No. 6.  That announcement was approximately six weeks before the August

4  24, 2020 deadline for students to request a leave of absence (and have all tuition

5  refunded).  Ex. G; RJN No. 7.  Electing against her leave and refund option,

6  Plaintiff's daughter chose to continue with remote instruction and enrolled in the

7  Fall 2020 semester.  *See* Ex. H; RJN No. 8.

8                                **ARGUMENT**

9     On the facts alleged, Plaintiff's claims must be dismissed.  Dismissal is

10  proper "where there is either a 'lack of a cognizable legal theory' or 'the absence of

11  sufficient facts alleged under a cognizable legal theory.'"  *Summit Tech.*, 922 F.

12  Supp. at 304 (quoting *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

13  1988)).  While a "court must accept as true all material allegations in the complaint,

14  . . . a court need not accept as true unreasonable inferences, unwarranted deductions

15  of fact, or conclusory legal allegations cast in the form of factual allegations."

16  *Summit Tech., Inc.*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*,

17  643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

18     All of Plaintiff's claims should be dismissed because California—like nearly

19  every state—prohibits challenges to the adequacy of a student's education.

20  Plaintiff's contract claim also fails because: (i) Plaintiff does not plead any specific

21  promise by Occidental to provide an in-person education under all circumstances;

22  and (ii) Occidental expressly warned students that its courses may change due to a

23  "national emergency" and reserved its rights to do so.  Plaintiff's unjust enrichment

24  and conversion claims fail because, among other reasons, Plaintiff admits a contract

25  exists here (which forecloses those claims) and Plaintiff lacks standing because he

26  is not an Occidental student and did not receive any education from Occidental,

27  whether "inadequate" or otherwise.

28

A.     **The Court Should Reject Plaintiff's Attempt to Second-Guess Occidental's Decisions About its Courses and Programs**

As a threshold matter, all of Plaintiff's claims should be rejected because California law gives academic institutions broad discretion to control and change their programs and course offerings—discretion that should be at its maximum now, during an unprecedented global pandemic.  Here, the theory underlying all of Plaintiff's claims is that because Occidental transitioned to remote instruction in response to the global COVID-19 pandemic, the education that his daughter received was inadequate.  *See, e.g.*, Compl. ¶ 5.  In other words, Plaintiff contends that Occidental should be liable because Plaintiff believes that his daughter coursework during Spring 2020 was not "worth" the tuition and fees that he paid (notwithstanding his apparent decision to disregard the leave of absence and refund option and continue paying for this same "subpar" education in Fall 2020).

Courts across the country have repeatedly rejected these same kinds of claims—*i.e.*, seeking damages for an allegedly "subpar" education—whether sounding in breach of contract or tort.  *See Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992)* ("[T]he overwhelming majority of states that have considered this type of claim have rejected it."); *Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (a "breach-of-contract claim that raises questions concerning the reasonableness of the educator's conduct in providing educational services . . . is one of educational malpractice" and must be dismissed (internal quotations omitted)); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 664-65 (S.D. Ohio 2018) (rejecting contract claim for tuition refund); *Barneby v. New England Sch. of Montessori, LLC*, 2016 WL 3768928, at *3 (Sup. Ct. Conn. 2016) (unpublished) (dismissing unjust enrichment claim for deprivation of educational opportunities).  California is no exception.  *See Smith v. Alameda Cty. Soc. Servs. Agency*, 90 Cal. App. 3d 929, 941 (1979) (a "cause of action seeking damages for educational malpractice [is] precluded by considerations of public policy . . . .").

1    The reason courts reject these types of claims is because colleges and

2    universities must be afforded the deference to make their own decisions about how

3    to run their institutions.  *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1047 (9th

4    Cir.1999).  School administrators and faculty, not courts, are experts in designing

5    courses and academic requirements, and must have "the widest range of discretion"

6    not only to adapt those programs to new pedagogical theories, the world's evolving

7    economies and cultures, and advances in technology and scientific knowledge, but

8    also to address multiple other contingencies beyond the college's control.  *Bd. of*

9    *Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6 (1978) (Powell, J.,

10   concurring); *Jamieson v. Vatterott Educ. Ctrs., Inc.*, 259 F.R.D. 520, 540 (D. Kan.

11   2009) ("[T]he adequacy of teachers and teaching methods are matters entrusted to

12   educators and institutions that regulate them, not to judges and juries.").  As the

13   California Supreme Court has explained, "[a]llowing a university flexibility in

14   shaping its academic programs to meet individual needs usually redounds to a

15   student's favor[.] . . . The attempt to use catalogues or similar published material to

16   freeze the academic relationship into a rigid mold would lead to a stifling of both

17   individual attention and equitable arrangements in the student's behalf." *Paulsen v.*

18   *Golden Gate Univ.*, 25 Cal.3d 803, 812 (1979); *see also Zumbrun*, 25 Cal. App. 3d

19   at 11 (noting that a "minimal departure from a projected course of study does not

20   entitle the student . . . to recover the tuition paid or any part of it").

21   But here, adjudicating Plaintiff's claims will necessarily require that this

22   Court make a judgment about the quality and value of the education that Occidental

23   provided in the Spring 2020 Semester.  *See Smith*, 90 Cal. App. 3d at 941 (noting

24   "the difficulties of assessing the wrongs and injuries involved, the lack of a

25   workable rule of care against which a school district's conduct may be measured

26   and the incalculable burden which would be imposed on . . . school systems");

27   *Ross*, 957 F.2d at 414 (noting "inherent uncertainties" in determining "nature of

28   damages" in educational malpractice claims).  This Court, in other words, would

7

1    inevitably be required to value the operations of an academic institution and to

2    substitute its judgment of that value for the judgment of college officials.  *See Peter*

3    *W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 824 (1976) ("Unlike

4    the activity of the highway or the marketplace, classroom methodology affords no

5    readily acceptable standards of care, or cause, or injury.").  Plaintiff's claims are

6    thus exactly the sort of educational malpractice claims that California courts (like

7    many others) have rejected.

8         In fact, allowing Plaintiff's claims to proceed would impose untenable limits

9    on Occidental's academic authority and discretion.  That is because holding

10   academic institutions "to an actionable 'duty of care,' in the discharge of their

11   academic functions, would expose them to the tort claims – real or imagined – of

12   disaffected students and parents in countless numbers. . . . The ultimate

13   consequences, in terms of public time and money, would burden them—and

14   society—beyond calculation."  *Peter W.*, 60 Cal. App. 3d at 825.

15        Occidental, for example, regularly makes academic decisions that students

16   could challenge on similar grounds, from changing course requirements or

17   pedagogy to closing a facility for renovations.  It would be untenable for

18   Occidental—or any other academic institution—to have to defend lawsuits claiming

19   that tuition should have been adjusted whenever a student or parent second-guesses

20   a decision that affects a student's education.  Indeed, the "sheer number of claims

21   that could arise if [malpractice claims] were allowed might overburden schools,"

22   regardless of their merits.  *Ross*, 957 F.2d at 414.  For exactly those same reasons,

23   this Court should reject Plaintiff's attempt to second-guess Occidental's decisions

24   about how to adapt its programs to the global COVID-19 pandemic.

25        **B.    Plaintiff's Contract Claim Fails.**

26        Next, Plaintiff's breach of contract claim fails because (i) he does not

27   identify the specific contractual "promise" Occidental allegedly breached; and (ii)

28   the course catalogs and other materials on which the Complaint relies expressly

afford Occidental broad discretion to modify the format of courses without refunding tuition or fees.

> 1. *Plaintiff Fails to Plead Adequately the Terms of the Contract That Occidental Allegedly Breached.*

Plaintiff's contract claim should be dismissed because he never identifies the specific contract language that he contends Occidental violated, nor could he. "The basic legal relation between a student and a private university or college is contractual in nature." *Zumbrun*, 25 Cal. App. 3d at 10. And to plead a claim for breach of contract Plaintiff "must plead, among other things, the contract either 'by its terms, set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference, or by its legal effect." *Kemper v. Cal. State Univ., Sacramento*, 2017 WL 3226846, at *2 (E.D. Cal. July 31, 2017) (internal quotation marks and citation omitted) (dismissing complaint that failed to "allege specific facts demonstrating the existence of a contract"). This requirement applies with particular force to claims brought by students against colleges and universities. Because contractual terms can be found in the "university's catalogs, student manuals, student catalogues, and other policies and procedures," to survive a motion to dismiss, the plaintiff must "specify the particular rule or procedure that the university allegedly violated." *Villard v. Capella Univ.*, 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21, 2017), *adopted by* 2018 WL 2011433 (M.D. Fla. Apr. 30, 2018).

But here, Plaintiff does not plausibly allege *any* "specific promise[,]" much less one that Occidental supposedly failed to keep. *Kemper*, 2017 WL 3226846, at *3. To be sure, Plaintiff asserts generally that Occidental promised to provide in-person instruction and entered into an "admission agreement" with those who paid tuition, but he does not identify the actual language of that promise or whatever other agreement he seeks to enforce. Compl. ¶¶ 24, 39. But he does not quote, attach, or describe any of the terms of that supposed "agreement." A vague

reference to an unidentified "admissions agreement" is not a plausible basis for a breach of contract claim. *See Kemper*, 2017 WL 3226846, at *2-*3. Indeed, a district court in Massachusetts recently dismissed a nearly identical tuition-related contract claim precisely because the complaint failed to allege the existence of a contract for in-person instruction. *See Chong v. Ne. Univ.*, _ F. Supp. 3d _, 2020 WL 5847626, at *3 (D. Mass. Oct. 1, 2020) ("[B]ecause the [complaint] does not plausibly establish that the parties' contract included any right to in-person instruction, plaintiffs have failed to state a claim for breach of contract."); *see also Raiser v. Ventura Coll. of Law*, 488 Fed. App'x 219, 222 (9th Cir. 2012) (rejecting claim over "[plaintiff]'s removal from a class and the revision of his curriculum because the curriculum agreement attached to the first amended complaint . . . does not prohibit changing his curriculum.").

Here, the only specific language that Plaintiff actually quotes is a statement from an Occidental webpage Occidental is located in Los Angeles. Compl. ¶ 22 ("Occidental possesses the distinct privilege of being a liberal arts college in the heart of a major global city, one of the largest and most diverse metropolitan areas in the United States . . ."). Nothing is untrue about that statement. But even if it were, this language fails to create a contractual guarantee of in-person instruction under all circumstances for at least two reasons.

*First*, the webpage, which Plaintiff concedes is an advertisement, does not create any contractual obligation. *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 455 (1987) ("[A]dvertisements are . . . merely . . . invitations to bargain."). "An advertisement can . . . form the basis of a unilateral contract," but only "if it calls for performance of a specific act without further communication and leaves nothing further for negotiation." *Id.* Plaintiff has not (and cannot) allege that those conditions are met. The Occidental webpage that Plaintiff cites does not call for the performance of any individual act in exchange for a tangible product or service. Instead, the webpage truthfully states that Occidental is located in Los Angeles and

describes, at a high level, the ways in which the College's location in Los Angeles influences its curriculum.  Compl. ¶ 22.  That advertising language is far too general to create any contractual obligations.  *Sinai Mem'l Chapel v. Dudler*, 231 Cal. App. 3d 190, 198 (1991) (advertisement promising "reverence for customs and observances in strict accord with family wishes" was too general to create implied contract to allow portraits on gravestones).

   *Second*, even if that advertisement did reflect a contract term (it does not), nothing in the statement Plaintiff quotes constitutes a promise that Occidental will conduct classes in-person under all circumstances—the truthful statement that Occidental is located in Los Angeles is not a promise (contractual or otherwise) concerning the delivery of its instruction to students that Occidental will never provide some or all instruction remotely, even during a national emergency. Indeed, it is black letter law that a reference to one attribute of a product or service in an advertisement is not a *guarantee* that the attribute will always be available (or function correctly) in all possible circumstances.  So, for example, advertisements describing Apple's "Siri" electronic assistant as a "breakthrough" and "intelligent" product that "understands what you mean" do not "expressly indicate[] that Siri would be able to answer every question, or do so consistently."  *In re Iphone 4S Consumer Litig.*, 2014 WL 589388, at *6-7 (N.D. Cal. Feb. 14, 2014), *aff'd*, 637 F. App'x 414 (9th Cir. 2016).  Nor are statements about the features of a product or service promises that those features will always be available and will never malfunction.  *See Long v. Hewlett-Packard Co.*, 2007 WL 2994812, at *6  (N.D. Cal. July 27, 2007) (product description "does not constitute a representation regarding the quality of the [product]" or "the consistent or longevity of [its] operation".)  Thus, absent allegations of a specific contractual promise that Occidental would not even temporarily conduct classes remotely, Plaintiff's contract claim fails.

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS, 2:20-CV-08481-JFW-RAO

2.  *The Contract on Which the Complaint Is Based Expressly Reserves Occidental's Right to Modify Its Programs.*

The contractual materials at issue (and on which the Complaint relies) expressly reserve Occidental's right to modify its programs, including in response to (as is the case here) a "national emergency." Ex. A. In other words, Plaintiff's contract claim fails because the *actual* terms of the contract gave Occidental the right to take the actions that it did.

When considering students' breach of contract claims against colleges and universities, courts regularly refer to course catalogs as a source of the terms of the contractual relationship. *Zumbrun*, 25 Cal. App. 3d at 10; *see also Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 n.1 (2014) (considering student handbook when dismissing plaintiff's breach of contract claim) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)); *Doe v. Vanderbilt Univ.*, 2019 WL 4748310, at *6 (M.D. Tenn. Sept. 30, 2019) (handbook "integral to Plaintiff's claims" can be considered "in its entirety for purposes of the pending motion to dismiss"); *see also Dasrath v. Ross Univ. Sch. of Med.*, 2008 WL 11438041, at *1 n.2 (E.D.N.Y. Aug. 06, 2008) (handbook properly considered when ruling on motion to dismiss because plaintiff "relies upon the existence of a contractual agreement to support his breach-of-contract claim" and because "the Handbook is readily available on the Internet"). Here, the relevant 2019 Occidental course catalog plainly states that the College "reserves the right to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so" and the cover specifies that "[f]ees, tuition, programs, courses, course content, instructors, and regulations are subject to change without notice." Ex. A (emphasis added). No one reviewing these provisions could conclude[2] that Occidental had made a contractual promise to provide on-campus

---

[2] The obligations set forth in these materials must be given their "reasonable" interpretation. *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 829

instruction under all circumstances, even in the midst of a public health crisis or other "national emergency."  *See Searle v. Regents of Univ. of Cal.*, 23 Cal. App. 3d 448, 452 (1972) ("[T]he regents' specific reservation of authority would also have been a condition of any contract with either faculty or students …."); *see also Gourdine v. Felician Coll.*, 2006 WL 2346278, at *4 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (unpublished) ("To the extent that plaintiffs seek to enforce a contractual right against defendants, that contract includes the college catalog's reservation of rights to alter or to eliminate the program in which they were enrolled."); *Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158, at *6 (S.D.N.Y. Apr. 15, 2004) ("Where there is 'a sufficiently unambiguous disclaimer, conspicuously placed in the employee handbook such that the employee reasonably could be expected to read it,' an implied contract claim may be dismissed as a matter of law.").

## C. Plaintiff's Unjust Enrichment And Conversion Claims Fail.

### 1. *Plaintiff Cannot Assert Claims for Unjust Enrichment and Conversion Predicated on a Breach of Contract.*

Next, no claim for unjust enrichment or conversion lies where, as here, the parties' relationship is governed by contract.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 2007) (an action for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*, 2010 WL 11595726, *7 (C.D. Cal. May 5, 2010) (rejecting conversion claim because "courts turn to the economic loss rule to bar conversion claims that are based solely on breaches of contractual duties").  "While generally parties are permitted to plead in the alternative, the allegation of binding contracts nullifies the unjust enrichment

(2007) ("The contractual obligations imposed by the language in catalogues 'centers around what is reasonable.'").

claim."[3] *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012)

(quotation omitted) (quoting and affirming trial court dismissal); *see also Chong*,

2020 WL 5847626, at *4 (dismissing unjust enrichment claim against university).

The same is true for conversion claims. *Advanced Riggers & Millwrights, LLC v.*

*Hoist Liftruck MFG, Inc.*, 2015 WL 12860470, at *7 (C.D. Cal. Oct. 29, 2015).

Plaintiff's unjust enrichment and conversion claims thus fail because they: (i) rest

on Occidental's purported failure to perform obligations under the agreement that

Plaintiff entered into when he paid tuition; and (ii) are barred by the economic loss

rule because they seek to recover for an economic injury—*i.e.*, tuition and fees. *See*

Compl. ¶¶ 44-57.

      Moreover, even if Plaintiff could bring these kinds of claims based on an

alleged breach of contract (he cannot) they must still be dismissed because Plaintiff

has not pleaded (and cannot plead) that Occidental's decision to transition to remote

learning contravened any duty it owed to its students.  Occidental's decision to

switch to remote learning in response to the COVID-19 pandemic was well within

the discretion to adapt curricula that the College is afforded by its own course

materials and by California law. *See supra* at 6-8 & 12.  Thus, for the same reason

that Plaintiff has failed to state a claim for breach of contract, his unjust enrichment

and conversion claims also fail. *See Miller v. Loyola Univ. of New Orleans*, 829

So. 2d 1057, 1061-62 (La. Ct. App. 2002) (dismissing unjust enrichment claim

---

[3] Plaintiff's "unjust enrichment" claim must also be dismissed because "unjust enrichment" is not an independent cause of action under California law. *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action."); *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (same); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) (same); *see Sotelo v. Rawlings Sporting Goods Co.*, 2019 WL 4392528, at *8 (C.D. Cal. May 8, 2019) (dismissing unjust enrichment claim "under California law . . . because it cannot serve as a standalone claim for relief"); *Freedline v. O Organics LLC*, 2020 WL 1643697, at *4 (N.D. Cal. Mar. 31, 2020) (same).

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS, 2:20-CV-08481-JFW-RAO

1  because student received instruction and credit); *Wright v. Capella Univ., Inc.*, 378

2  F. Supp. 3d 760, 775 (D. Minn. 2019) (dismissing unjust enrichment claim where

3  plaintiff received instruction); *Sonoiki v. Harvard Univ.*, 2020 WL 3416516, at *15

4  (D. Mass. June 22, 2020) (dismissing quasi-contract claim based on breach of

5  student handbook where no breach occurred), *appeal docketed* No. 20-1689 (1st

6  Cir. July 16, 2020); *Neelon v. Krueger*, 2015 WL 4647931, at *6 (D. Mass. Aug. 5,

7  2015) (conversion element not satisfied where actions in accordance with contract

8  "not wrongful").

9        2.    *Plaintiff's Conversion Claim Also Fails for Additional Reasons.*

10       Plaintiff's conversion claim also fails for two additional reasons:  (i) Plaintiff

11  does not seek to recover tangible property; and (ii) Plaintiff made no demand to

12  Occidental for the return of his allegedly converted property before filing this

13  Complaint.

14       In California, "[m]oney cannot be the subject of a cause of action for

15  conversion unless there is a specific, identifiable sum involved, such as where an

16  agent accepts a sum of money to be paid to another and fails to make the payment."

17  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP*, 150

18  Cal. App. 4th 384, 395 (2007); *see also In re Bailey*, 197 F.3d 997, 1000-01 (9th

19  Cir. 1999) (attorney's use of another attorney's share of settlement funds did not

20  constitute conversion); *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 231

21  (1997) (claim that defendant converted "approximately $1.4 million" and

22  "approximately $120,000" insufficient as a matter of law).  Accordingly,

23  "California cases permitting an action for conversion of money typically involve

24  those who have misappropriated, commingled or misapplied specific funds held for

25  the benefit of others." *PCO, Inc.*, 150 Cal. App. 4th at 396.

26       But here, Plaintiff's tuition and fees are fungible amounts that cannot be

27  "identified as a specific thing." *Id.* at 395.  Plaintiff has not alleged that he gave

28  Occidental earmarked bills that it was supposed to hold in trust—rather, he claims

1   that he used fungible money to pay for *services*, some of which have been rendered

2   and some of which he contends were not provided.  The *value* of six weeks of in-

3   person instruction is not an "identifiable sum," and Plaintiff's conversion claim

4   therefore fails as a matter of law.  *Id.*

5          Plaintiff's conversion claim must also be dismissed because Plaintiff failed to

6   demand that Occidental return a portion of the tuition and fees he paid before filing

7   this lawsuit.  Where, as here, the property alleged to have been converted was

8   initially acquired in a lawful manner, no conversion claim lies unless a plaintiff

9   establishes that he demanded the return of the property.  *Atwood v. S. Cal. Ice Co.,*

10  *63 Cal. App. 343, 345 (1923)* (disapproved on other grounds).  Because Plaintiff

11  has made no such allegations, his conversion claim must be dismissed.

12         **D.     Plaintiff Lacks Standing to Assert the Claims Alleged.**

13         Finally, each of Plaintiff's claims must also be dismissed because Plaintiff

14  lacks standing.  A plaintiff must have standing as to each claim and each form of

15  relief sought.  *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645,

16  1650 (2017).  And to establish standing, Plaintiff must "have (1) suffered an injury

17  in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and

18  (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.*

19  *Robins ("Spokeo I")*, 136 S. Ct. 1540, 1547 (2016).  Moreover, in making these

20  showings, a plaintiff must rely on his own legal rights and interests rather than

21  those of others.  *See Constr. Indus. Ass'n of Sonoma Cty. v. City of Petaluma*, 522

22  F.2d 897, 903 (9th Cir. 1975).  Plaintiff lacks standing because he has no legally

23  cognizable relationship with the College, has no legal rights and interests at issue,

24  and has suffered no injury that this lawsuit could redress.

25         *First*, to the extent Plaintiff seeks to enforce a contract, it is a contract to

26  which he is not a party and under which he has no rights.  California law recognizes

27  a contractual relationship between colleges and their students, not the parents.  *See*

28  *Zumbrun*, 25 Cal. App. 3d at 10 (describing contractual relationship between "a

16

student and a private university or college").  In fact, courts across the country have routinely held that parents lack standing to bring claims against their children's' colleges and universities, even when the parents pay tuition on behalf of their children.  *See, e.g.*, *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009)* ("[i]t is fairly evident that the 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority.") (quoting *Apffel v. Huddleston*, 50 F. Supp. 2d 1129, 1133 (D. Utah 1999)); *McCormick v. Dresdale*, 2010 WL 1740853, at *2 (D.R.I. Apr. 28, 2010)* (dismissing parents' breach of contract claim against Brown University for lack of standing); *Runge v. Sanford*, 2009 WL 9083917, at *1 (D.S.C. Feb. 25, 2009)* (plaintiff lacked standing to bring claim on behalf of adult children).  The Court should reach the same conclusion here: Plaintiff's daughter attends Occidental, not Plaintiff, and she was the intended beneficiary of any promises that the College allegedly made.  Plaintiff, on the other hand, does not and cannot establish that he has any right to enroll, receive academic credits, seek a refund, or enforce the substantive terms of his daughter's contractual relationship with Occidental.

*Second*, the "injury" (if any) that resulted from the transition to remote instruction was suffered by students, not their parents.  Here, "[Plaintiff] ha[s] not alleged any separate and distinct denial of services to [him] apart from [his] role as parent[] of [a] child[] enrolled . . . in [Occidental's] programs." *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1292 (D. Or. 2001)* (parents did not plead "independent and separate right to have access to the classroom for their own benefit").  Accordingly, Plaintiff lacks standing and his entire complaint should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed with prejudice.

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 14, 2020

O'MELVENY & MYERS LLP
MATTHEW D. POWERS
APALLA U. CHOPRA


By:   /s/ Matthew D. Powers

Matthew D. Powers
Attorneys for Defendant
Occidental College

18