MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
San Francisco, California 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

APALLA U. CHOPRA (S.B. #163207)
achopra@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

Attorneys for Defendant
Occidental College

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN J. LINDNER, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>OCCIDENTAL COLLEGE,<br><br>        Defendant. | Case No. 2:20-cv-08481-JFW-RAO<br><br>**DEFENDANT OCCIDENTAL COLLEGE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. John F. Walter<br>Courtroom: 7A<br>Hearing Date: December 21, 2020<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................3

    A.    Occidental's Catalog ..............................................................................3

    B.    The Global Coronavirus Pandemic and Occidental's Transition
          to Virtual Instruction and Services ........................................................4

ARGUMENT ......................................................................................................5

    A.    The Court Should Reject Plaintiffs' Attempt to Second-Guess
          Occidental's Decisions About Its Courses and Programs. ....................6

    B.    Plaintiffs' Contract Claims Fail. ...........................................................9

          1.    Plaintiffs Fail to Plead Adequately the Express or Implied
               Terms of the Contract That Occidental Allegedly
               Breached. ...................................................................................9

          2.    The Contract on Which the FAC Is Based Expressly
               Reserves Occidental's Right to Modify Its Programs. .............12

          3.    Plaintiffs May Not Infer a Promise of In-Person
               Education in All Circumstances, Including During a
               National Emergency. ...............................................................14

    C.    Plaintiffs' Unjust Enrichment, Conversion, and Money Had and
          Received Claims Fail. ..........................................................................17

          1.    Plaintiffs Cannot Assert Claims for Unjust Enrichment,
               Conversion, and Money Had and Received Predicated on
               a Breach of Contract. ...............................................................17

           2.    Plaintiffs' Conversion and Money Had and Received
               Claims Also Fail for Additional Reasons. .................................19

    D.    Plaintiff Steven Lindner Lacks Standing to Assert the Claims
          Alleged. ...............................................................................................20

CONCLUSION..................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Antonelli Coll.*,
   304 F. Supp. 3d 656 (S.D. Ohio 2018) ..................................................7

*Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*,
   2015 WL 12860470 (C.D. Cal. Oct. 29, 2015) ...................................18

*Apffel v. Huddleston*,
   50 F. Supp. 2d 1129 (D. Utah 1999) ....................................................21

*Atwood v. S. Cal. Ice Co.*,
   63 Cal. App. 343 (1923) ......................................................................20

*Balisteri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) .................................................................5

*Banks v. Dominican Coll.*,
   35 Cal. App. 4th 1545 (1995) ..............................................................15

*Barneby v. New England Sch. of Montessori, LLC*,
   2016 WL 3768928 (Sup. Ct. Conn. 2016) .............................................7

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
   435 U.S. 78 (1978) .................................................................................7

*Charpentier v. Los Angeles Rams Football Co., Inc.*,
   75 Cal. App. 4th 301 (1999) ................................................................16

*Chong v. Ne. Univ.*,
   __ F. Supp. 3d __, 2020 WL 5847626 (D. Mass. Oct. 1, 2020) ...............10, 17

*Colodney v. Continuum Health Partners, Inc.*,
   2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) .......................................14

*Constr. Indus. Ass'n of Sonoma Cty. v. City of Petaluma*,
   522 F.2d 897 (9th Cir. 1975) ...............................................................20

*Dasrath v. Ross Univ. Sch. of Med.*,
   2008 WL 11438041 (E.D.N.Y. Aug. 06, 2008) ..................................13

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) ................................................................17

*Dea v. Davy*,
   150 Cal. App. 2d 435 (1957) ...............................................................15

*Doe v. Univ. of the S.*,
   687 F. Supp. 2d 744 (E.D. Tenn. 2009) ..............................................21

*Doe v. Vanderbilt Univ.*,
   2019 WL 4748310 (M.D. Tenn. Sept. 30, 2019) ................................13

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Farmers Ins. Exchange v. Zerin,*
  53 Cal. App. 4th 445 (1998) ................................................................. 19, 20

*Freedline v. O Organics LLC,*
  2020 WL 1643697 (N.D. Cal. Mar. 31, 2020) ...................................... 17

*Gibson v. Walden Univ., LLC,*
  66 F. Supp. 3d 1322 (2014) ................................................................... 13

*Gillis v. Principia Corp.,*
  832 F.3d 865 (8th Cir. 2016) ................................................................ 7

*Glass v. Hillsboro Sch. Dist. 1J,*
  142 F. Supp. 2d 1286 (D. Or. 2001) ..................................................... 21

*Gorlach v. Sports Club Co.,*
  209 Cal. App. 4th 1497 (2012) ............................................................. 15

*Gourdine v. Felician Coll.,*
  2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15, 2006) ........... 14

*Gutierrez v. Girardi,*
  194 Cal. App. 4th 925 (2011) ............................................................... 20

*Harris v. Time, Inc.,*
  191 Cal. App. 3d 449 (1987) ................................................................ 10, 11

*In re Bailey,*
  197 F.3d 997 (9th Cir. 1999) ................................................................ 19

*In re Iphone 4S Consumer Litig.,*
  2014 WL 589388 (N.D. Cal. Feb. 14, 2014), *aff'd,* 637 F. App'x
  414 (9th Cir. 2016) ............................................................................... 11

*IV Solutions, Inc. v. United Healthcare Services, Inc.,*
  2014 WL 6896023 ................................................................................ 14, 15

*Jamieson v. Vatterott Educ. Ctrs., Inc.,*
  259 F.R.D. 520 (D. Kan. 2009) ............................................................ 7

*Jogani v. Superior Court,*
  165 Cal. App. 4th 901 (2008) ............................................................... 17

*Kashmiri v. Regents of Univ. of Cal.,*
  156 Cal. App. 4th 809 (2007) ............................................................... 13

*Kemper v. Cal. State Univ., Sacramento,*
  2017 WL 3226846 (E.D. Cal. July 31, 2017) ...................................... 9, 10

*Klein v. Chevron U.S.A., Inc.,*
  202 Cal. App. 4th 1342 (2012) ............................................................. 17

iii

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Kucharczyk v. Regents of Univ. of Cal.,*
  946 F. Supp. 1419 (N.D. Cal. 1996) ................................................................14

*Lance Camper Mfg. Corp. v. Republic Indemnity Co.,*
  44 Cal. App. 4th 194 (1996) ............................................................................14

*Levine v. Blue Shield of Cal.,*
  189 Cal. App. 4th 1117 (2010) ........................................................................17

*Long v. Hewlett-Packard Co.,*
  2007 WL 2994812 (N.D. Cal. July 27, 2007) ..................................................11

*McCormick v. Dresdale,*
  2010 WL 1740853 (D.R.I. Apr. 28, 2010) .......................................................21

*Miller v. Loyola Univ. of New Orleans,*
  829 So. 2d 1057 (La. Ct. App. 2002) ...............................................................18

*Neelon v. Krueger,*
  2015 WL 4647931 (D. Mass. Aug. 5, 2015) ....................................................18

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,*
  96 F.3d 1151 (9th Cir. 2007) ...........................................................................17

*Paulsen v. Golden Gate Univ.,*
  25 Cal.3d 803 (1979) ...................................................................................8, 15

*Paynter v. NYU,*
  319 N.Y.S.2d 893 (1971) ..................................................................................16

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, &*
  *Shapiro, LLP,*
  150 Cal. App. 4th 384 (2007) ..........................................................................19

*Peter W. v. San Francisco Unified Sch. Dist.,*
  60 Cal. App. 3d 814 (1976) ...............................................................................8

*Raiser v. Ventura Coll. of Law,*
  488 Fed. App'x 219 (9th Cir. 2012) .................................................................12

*Rhodeman v. Ocwen Loan Servicing, LLC,*
  2020 WL 4727289 (C.D. Cal. July 30, 2020) .............................................17, 18

*Ross v. Creighton Univ.,*
  957 F.2d 410 (7th Cir. 1992) ......................................................................6, 8, 9

*Runge v. Sanford,*
  2009 WL 9083917 (D.S.C. Feb. 25, 2009) ......................................................21

*Searle v. Regents of Univ. of Cal.,*
  23 Cal. App. 3d 448 (1972) ..............................................................................14

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS FAC, 2:20-CV-08481-JFW-RAO

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Sinai Mem'l Chapel v. Dudler*,
231 Cal. App. 3d 190 (1991) ..................................................................11

*Smith v. Alameda Cty. Soc. Servs. Agency*,
90 Cal. App. 3d 929 (1979) ...............................................................7, 8

*Sonoiki v. Harvard Univ.*,
2020 WL 3416516 (D. Mass. June 22, 2020), *appeal docketed* No.
20-1689 (1st Cir. July 16, 2020) ...........................................................18

*Sotelo v. Rawlings Sporting Goods Co.*,
2019 WL 4392528 (C.D. Cal. May 8, 2019) .........................................17

*Spokeo, Inc. v. Robins ("Spokeo I")*,
136 S. Ct. 1540 (2016) ...........................................................................20

*Spy Optic, Inc. v. Alibaba.com, Inc.*,
163 F. Supp. 3d 755 (C.D. Cal. 2015) .....................................................3

*Summit Tech., Inc. v. High-Line Medical Instruments Co.*,
922 F. Supp. 299 (C.D. Cal. 1996) ......................................................3, 5

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .................................................................13

*Telluselle v. Hawaii Pac. Univ.*,
528 Fed. App'x 739 (9th Cir. 2013) .......................................................12

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
137 S. Ct. 1645 (2017) ...........................................................................20

*Villard v. Capella Univ.*,
2017 WL 9253388 (M.D. Fla. Dec. 21, 2017), *adopted by* 2018 WL
2011433 (M.D. Fla. Apr. 30, 2018) ........................................................10

*Vu v. Cal. Commerce Club, Inc.*,
58 Cal. App. 4th 229 (1997) ...................................................................19

*Walter v. Hughes Commc'ns, Inc.*,
682 F. Supp. 2d 1031 (N.D. Cal. 2010) .................................................20

*Western Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981) ..........5

*Wong v. Regents of Univ. of Cal.*,
15 Cal. App. 3d 823 (1971) ....................................................................15

*Wright v. Capella Univ., Inc.*,
378 F. Supp. 3d 760 (D. Minn. 2019) ....................................................18

*Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*,
2010 WL 11595726 (C.D. Cal. May 5, 2010) ........................................17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Zukle v. Regents of Univ. of Cal.,*
  166 F.3d 1041 (9th Cir.1999) ........................................................................... 7

*Zumbrun v. Univ. of S. Cal.,*
  25 Cal. App. 3d 1 (1972) ........................................................................... passim

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2       Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), Defendant

3   Occidental College ("Occidental" or the "College") submits this Memorandum in

4   support of its Motion to Dismiss Plaintiffs Steven J. Lindner and Chloe A.

5   Lindner's ("Plaintiffs") First Amended Complaint ("FAC").

6                                  **INTRODUCTION**

7       Like nearly every college and university in the United States, in March 2020,

8   Occidental made the difficult decision to transition to remote instruction to protect

9   the health of students, faculty and staff during the COVID-19 global pandemic.

10  Since then, the College has dedicated substantial resources to providing high-

11  quality and accessible remote instruction, while working toward the day when all

12  members of the Occidental community will be able to return to campus safely.

13      Plaintiff Chloe Lindner is an Occidental student who was enrolled during the

14  Spring 2020 semester when the pandemic began and who decided to re-enroll (and

15  pay tuition and fees) for the Fall 2020 semester knowing that instruction at

16  Occidental would continue to be remote.  She and her father, Plaintiff Steven

17  Lindner, do not contend that the transition to remote education precluded her from

18  earning credits towards her degree or completing any classes.  Instead, Plaintiffs

19  allege—on behalf of all "people who paid tuition and fees for the Spring 2020

20  Semester at Occidental," FAC ¶ 1—that they are entitled to a refund because

21  Occidental obeyed health directives from state and local authorities and transitioned

22  to remote instruction.

23       Occidental shares Plaintiffs' frustration with the constraints that the

24  pandemic has imposed on the Occidental community.  But while Plaintiffs'

25  disappointment is justified, their legal claims are not.  Occidental's decision to

26  move to remote instruction in the face of an unprecedented public health crisis was

27  well within its discretion under California law and the contractual material

28  referenced in the FAC.  The FAC should be dismissed with prejudice for four

                                 1

1    independent reasons.

2        *First*, all of Plaintiffs' claims are based on the theory that they are owed

3    money because the quality of the remote instruction provided is allegedly inferior to

4    in-person instruction.  But nearly every state—including California—categorically

5    rejects those kinds of claims, whether framed in contract or tort.  Occidental has

6    (and, indeed, *must* have) the authority to modify its academic programs and

7    services to adapt to unforeseeable circumstances, and must be able to do so without

8    fear of having its judgments second-guessed in subsequent litigation.

9        If Plaintiffs are allowed to proceed with these claims, every decision that a

10   student (or his parent) believes negatively affects the quality of his education could

11   be the subject of a lawsuit.  That is why so-called "educational malpractice" claims

12   have been routinely rejected by courts around the country.

13       *Second*, Plaintiffs' contract claims fail for the independent reason that

14   Occidental never made a promise—expressly or implicitly—to provide in-person

15   education under all possible circumstances.  Plaintiffs identify no such promise,

16   which is one reason their contract claims fail.  But a second and more fundamental

17   reason is that the contractual material on which the FAC relies (and that governs

18   Occidental's relationship with its students) expressly affords the College authority

19   to alter academic programs and services.  For example, the 2019-2020 Occidental

20   College Catalog ("2019 Catalog"), which was in effect during the Spring 2020

21   semester, "reserves [to Occidental] the right to change fees, modify its services, or

22   change its program should economic conditions or national emergency make it

23   necessary to do so."  Ex. A[1]; RJN No. 1.  That provision mirrors the broad

24   discretion already afforded colleges by California law.  These contractual and legal

25

26   _____

     [1] All exhibits are attached to the accompanying Declaration of Matthew D. Powers
27   in Support of Occidental's Request for Judicial Notice ("RJN").  To be clear, the
     language quoted here ("national emergency") was in place in 2019 (and in
28   Occidental Catalogs from several earlier years) ***and pre-dates the COVID-19
     pandemic***.

2

grants of discretion foreclose any suggestion that Occidental promised in-person education no matter what.

*Third*, Plaintiffs' unjust enrichment, conversion, and money had and received claims fail as a matter of law for several reasons, including that they cannot proceed when, as here, the parties' relationship is governed by contract and plaintiffs seek only damages from a purported breach of that contract.

*Finally*, Plaintiff Steven Lindner lacks standing to assert his claims against Occidental because he concedes that it was his daughter, not him, who was purportedly injured by Occidental's transition to distance learning.

For these reasons and those described in greater detail below, the FAC should be dismissed with prejudice.

## BACKGROUND

The following are relevant facts alleged in the FAC and accepted as true for purposes of this motion, *Summit Tech., Inc. v. High-Line Medical Instruments Co., 922 F. Supp. 299, 304 (C.D. Cal. 1996)*, or "material which is . . . relied upon by the [C]omplaint . . . [or] in the public record."  *Spy Optic, Inc. v. Alibaba.com, Inc., 163 F. Supp. 3d 755, 761-62 (C.D. Cal. 2015)*.

### A.    Occidental's Catalog

"The basic legal relation between a student and a private university or college is contractual in nature.  The catalogs, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 10 (1972).  Here, Occidental's 2019 Catalog sets forth the terms of the contract between Occidental and its students during the Spring 2020 semester—and nothing in that Catalog conditions tuition or fees on the provision of in-person instruction.  *See id.*; Ex. A; RJN No. 1.  To the contrary, Occidental expressly reserved the right, in the Tuition and Fees section, "to change fees, modify its services, or change its program should economic conditions or national emergency make it necessary to do so."  Ex. A.  The cover of

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS FAC, 2:20-CV-08481-JFW-RAO

the 2019 Catalog likewise specifies that "[f]ees, tuition, programs, courses, course content, instructors, and regulations are subject to change without notice." *Id.* at 3.

**B.     The Global Coronavirus Pandemic and Occidental's Transition to Virtual Instruction and Services**

On March 4, 2020, California Governor Gavin Newsom declared a state of emergency in response to the spread of COVID-19. Ex. B ("Proclamation of a State of Emergency"); RJN No. 2. About a week later, Occidental announced that the College would transition to virtual instruction on March 23, 2020 (the first day back from spring break) to protect the health and safety of the Occidental community. FAC ¶ 10; Ex. C; RJN No. 3. The College's announcement explained that "[c]lasses w[ould] continue to the fullest extent possible, albeit online, so that students c[ould] continue their coursework and make progress towards graduation requirements" and that "[a]ll administrative and support functions w[ould] continue to operate." Ex. C.

On March 19, 2020, Governor Newsom issued an emergency order directing all individuals to stay at home except as needed to maintain critical infrastructure sectors. Ex. D ("Exec. Order N-33-20"); RJN No. 4. That same day, Los Angeles Mayor Eric Garcetti issued a "Safer at Home" order, which specified that colleges could resume operations "for purposes of facilitating distance learning or performing essential functions provided that social distancing of six-feet per person is maintained to the greatest extent possible." Ex. E ("Safer at Home Pub. Order"); RJN No. 5. Consistent with these orders, Occidental transitioned to remote instruction for the remainder of the Spring 2020 semester. FAC ¶ 11.

Occidental refunded $3,519.54 to the account of Plaintiff Chloe Lindner due to its closure of student residences. Compl. ¶ 12. Nevertheless, on July 6, 2020—after Plaintiff Chloe Lindner completed and received full credit for the Spring semester—Plaintiff Steven Lindner commenced this putative class action seeking an additional refund because the College transitioned to remote instruction. *See*

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS FAC, 2:20-CV-08481-JFW-RAO

Compl. ¶ 1; FAC ¶ 1.

On July 15, 2020, Occidental announced that remote instruction would continue through the Fall 2020 semester.  Ex. F. ("*Updated Plans for Fall 2020*"); RJN No. 6.  That announcement was approximately six weeks before the August 24, 2020 deadline for students to request a leave of absence (and have all tuition refunded).  Ex. G; RJN No. 7.  Electing against her leave and refund option, Plaintiff Chloe Lindner chose to continue with remote instruction and enrolled in the Fall 2020 semester.  *See* FAC ¶ 17.

In their FAC, Plaintiffs also cite Occidental's 2019 financial statement, which predates the pandemic and fails to account for its impact on Occidental's budget.  *Id.* ¶¶ 27-19.  Although not at issue on this motion, the financial impact of the COVID-19 pandemic has been dramatic: among other measures, Occidental has been forced to approximately double last year's endowment draw, reduce expenditures on facilities renovations, cut the salaries of senior staff, freeze others' salaries and hiring, and furlough employees.[2]

## ARGUMENT

On the facts alleged, Plaintiffs' claims must be dismissed.  Dismissal is proper "where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"  *Summit Tech.*, 922 F. Supp. at 304 (quoting *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  While a "court must accept as true all material allegations in the complaint, . . . a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations."  *Summit Tech., Inc.*, 922 F. Supp. at 304 (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied*, 454 U.S. 1031 (1981)).

All of Plaintiffs' claims should be dismissed because California—like nearly

---

[2] https://www.oxy.edu/covid-19/community-messages/financial-update-fiscal-year.

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS FAC, 2:20-CV-08481-JFW-RAO

1   every state—prohibits challenges to the adequacy of a student's education.

2   Plaintiffs' express and implied contract claims also fail because: (i) Plaintiffs do not

3   plead any specific promise by Occidental to provide an in-person education under

4   all circumstances; and (ii) Occidental expressly warned students that its courses

5   may change due to a "national emergency" and reserved its rights to do so.

6   Plaintiffs' unjust enrichment, conversion, and money had and received claims fail

7   because, among other reasons, Plaintiffs admit a contract exists here (which

8   forecloses those claims).  Additionally, Plaintiff Steven Lindner lacks standing

9   because he is not an Occidental student and did not receive any education from

10  Occidental, whether "inadequate" or otherwise.

11      **A.    The Court Should Reject Plaintiffs' Attempt to Second-Guess**

12             **Occidental's Decisions About Its Courses and Programs.**

13      As a threshold matter, all of Plaintiffs' claims should be rejected because

14  California law gives academic institutions broad discretion to control and change

15  their programs and course offerings—discretion that should be at its maximum

16  now, during an unprecedented global pandemic.  Here, the theory underlying all of

17  Plaintiffs' claims is that because Occidental transitioned to remote instruction in

18  response to the global COVID-19 pandemic, the education that Plaintiff Chloe

19  Lindner received was inadequate.  *See, e.g.*, FAC ¶¶ 12, 47.  In other words,

20  Plaintiffs contend that Occidental should be liable because Plaintiffs believe

21  Plaintiff Chloe Lindner's coursework during Spring 2020 was not "worth" the

22  tuition and fees that they paid (notwithstanding their apparent decision to disregard

23  the leave of absence and refund option and continue paying for this same "subpar"

24  education in Fall 2020).  *Id.* ¶¶ 12, 47.

25      Courts across the country have repeatedly rejected these same kinds of

26  claims—*i.e.*, seeking damages for an allegedly "subpar" education—whether

27  sounding in breach of contract or tort.  *See Ross v. Creighton Univ.*, 957 F.2d 410,

28  414 (7th Cir. 1992) ("[T]he overwhelming majority of states that have considered

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS FAC, 2:20-CV-08481-JFW-RAO

this type of claim have rejected it."); *Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (a "breach-of-contract claim that raises questions concerning the reasonableness of the educator's conduct in providing educational services . . . is one of educational malpractice" and must be dismissed (internal quotations omitted)); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 664-65 (S.D. Ohio 2018) (rejecting contract claim for tuition refund); *Barneby v. New England Sch. of Montessori, LLC*, 2016 WL 3768928, at *3 (Sup. Ct. Conn. 2016) (unpublished) (dismissing unjust enrichment claim for deprivation of educational opportunities).  California is no exception.  *See Smith v. Alameda Cty. Soc. Servs. Agency*, 90 Cal. App. 3d 929, 941 (1979) (a "cause of action seeking damages for educational malpractice [is] precluded by considerations of public policy . . . .").

The reason courts reject these types of claims is because colleges and universities must be afforded the deference to make their own decisions about how to run their institutions.  *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1047 (9th Cir.1999).  School administrators and faculty, not courts, are experts in designing courses and academic requirements, and must have "the widest range of discretion" not only to adapt those programs to new pedagogical theories, the world's evolving economies and cultures, and advances in technology and scientific knowledge, but also to address multiple other contingencies beyond the college's control.  *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96 n.6 (1978) (Powell, J., concurring); *Jamieson v. Vatterott Educ. Ctrs., Inc.*, 259 F.R.D. 520, 540 (D. Kan. 2009) ("[T]he adequacy of teachers and teaching methods are matters entrusted to educators and institutions that regulate them, not to judges and juries.").  As the California Supreme Court has explained, "[a]llowing a university flexibility in shaping its academic programs to meet individual needs usually redounds to a student's favor[.] . . . The attempt to use catalogues or similar published material to freeze the academic relationship into a rigid mold would lead to a stifling of both individual attention and equitable arrangements in the student's behalf."  *Paulsen v.*

1    *Golden Gate Univ.*, 25 Cal.3d 803, 812 (1979); *see also Zumbrun*, 25 Cal. App. 3d
2    at 11 (noting that a "minimal departure from a projected course of study does not
3    entitle the student . . . to recover the tuition paid or any part of it").

4            But here, adjudicating Plaintiffs' claims will necessarily require that this
5    Court make a judgment about the quality and value of the education that Occidental
6    provided in the Spring 2020 semester.  *See Smith*, 90 Cal. App. 3d at 941 (noting
7    "the difficulties of assessing the wrongs and injuries involved, the lack of a
8    workable rule of care against which a school district's conduct may be measured
9    and the incalculable burden which would be imposed on . . . school systems");
10   *Ross*, 957 F.2d at 414 (noting "inherent uncertainties" in determining "nature of
11   damages" in educational malpractice claims).  This Court, in other words, would
12   inevitably be required to value the operations of an academic institution and to
13   substitute its judgment of that value for the judgment of college officials.  *See Peter*
14   *W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d 814, 824 (1976) ("Unlike
15   the activity of the highway or the marketplace, classroom methodology affords no
16   readily acceptable standards of care, or cause, or injury.").  Plaintiffs' claims are
17   thus exactly the sort of educational malpractice claims that California courts (like
18   many others) have rejected.

19           In fact, allowing Plaintiffs' claims to proceed would impose untenable limits
20   on Occidental's academic authority and discretion.  That is because holding
21   academic institutions "to an actionable 'duty of care,' in the discharge of their
22   academic functions, would expose them to the tort claims – real or imagined – of
23   disaffected students and parents in countless numbers. . . . The ultimate
24   consequences, in terms of public time and money, would burden them—and
25   society—beyond calculation."  *Peter W.*, 60 Cal. App. 3d at 825.

26           Occidental, for example, regularly makes academic decisions that students
27   could challenge on similar grounds, from changing course requirements or
28   pedagogy to closing a facility for renovations.  It would be untenable for

8

Occidental—or any other academic institution—to have to defend lawsuits claiming that tuition should have been adjusted whenever a student or parent second-guesses a decision that affects a student's education.  Indeed, the "sheer number of claims that could arise if [malpractice claims] were allowed might overburden schools," regardless of their merits.  *Ross*, 957 F.2d at 414.  For exactly those same reasons, this Court should reject Plaintiffs' attempt to second-guess Occidental's decisions about how to adapt its programs to the global COVID-19 pandemic.

## B.   Plaintiffs' Contract Claims Fail.

Next, Plaintiffs' breach of contract claims fail because (i) Plaintiffs do not identify the specific contractual "promise" Occidental allegedly breached; (ii) the 2019 Catalog affords Occidental broad discretion to modify the format of courses without refunding tuition or fees; and (iii) the express grant of discretion (along with California law) precludes inferring an implied contractual obligation to provide in-person education no matter the circumstances.

### 1.   *Plaintiffs Fail to Plead Adequately the Express or Implied Terms of the Contract That Occidental Allegedly Breached.*

"The basic legal relation between a student and a private university or college is contractual in nature." *Zumbrun*, 25 Cal. App. 3d at 10.  And to plead a claim for breach of express or implied contract Plaintiffs "must plead, among other things, the contract either 'by its terms, set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference, or by its legal effect." *Kemper v. Cal. State Univ., Sacramento*, 2017 WL 3226846, at *2-*3 (E.D. Cal. July 31, 2017) (internal quotation marks and citation omitted) (advertisement and assurances from university "insufficient to support the existence or an oral or implied contract").  This requirement applies with particular force to claims brought by students against colleges and universities.  Because contractual terms can be found in the "university's catalogs, student manuals, student catalogues, and other policies and procedures," to survive a motion to dismiss,

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS FAC, 2:20-CV-08481-JFW-RAO

1  plaintiffs must "specify the particular rule or procedure that the university allegedly

2  violated." *Villard v. Capella Univ.*, 2017 WL 9253388, at *2 (M.D. Fla. Dec. 21,

3  2017), *adopted by* 2018 WL 2011433 (M.D. Fla. Apr. 30, 2018).

4      Plaintiffs here, however, fail to plausibly allege *any* "specific promise[,]"

5  much less one that Occidental supposedly failed to keep. *Kemper*, 2017 WL

6  3226846, at *3.  To be sure, Plaintiffs generally assert that Occidental promised to

7  provide in-person instruction and entered into an "agreement" with those who paid

8  tuition, but they do not identify the actual language of that promise or whatever

9  other agreement they seek to enforce.  FAC. ¶ 51.  They do not quote, attach, or

10  describe any of the terms of that supposed "agreement."  A vague reference to an

11  unidentified "agreement" is not a plausible basis for a breach of contract claim.  *See*

12  *Kemper*, 2017 WL 3226846, at *2-*3.  Indeed, a district court in Massachusetts

13  recently dismissed a nearly identical tuition-related contract claim precisely because

14  the complaint failed to allege the existence of a contract for in-person instruction.

15  *See Chong v. Ne. Univ.*, __ F. Supp. 3d __, 2020 WL 5847626, at *3 (D. Mass. Oct. 1,

16  2020) ("[B]ecause the [complaint] does not plausibly establish that the parties'

17  contract included any right to in-person instruction, plaintiffs have failed to state a

18  claim for breach of contract.").

19      Instead, the new FAC includes a two-page excerpt from an Occidental

20  webpage describing the Occidental campus and its location in Los Angeles.  FAC

21  ¶¶ 32; 33.  But nothing in that statement is untrue, and the language Plaintiffs cite

22  is not a contractual guarantee of in-person instruction under all circumstances for at

23  least two reasons.

24      *First*, the webpage, which Plaintiffs concede is an advertisement, does not

25  create any contractual obligation.  *Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 455

26  (1987) ("[A]dvertisements are . . . merely . . . invitations to bargain.").  "An

27  advertisement can . . . form the basis of a unilateral contract," but only "if it calls

28  for performance of a specific act without further communication and leaves nothing

1    further for negotiation." *Id.*  Plaintiffs have not (and cannot) allege that those

2    conditions are met.  The Occidental webpage that Plaintiffs cite does not call for the

3    performance of any individual act in exchange for a tangible product or service.

4    Instead, the webpage truthfully states that Occidental is located in Los Angeles and

5    describes, at a high level, the ways in which the College's location in Los Angeles

6    influences its curriculum.  FAC ¶¶ 32, 33.  That advertising language is far too

7    general to create any contractual obligations. *Sinai Mem'l Chapel v. Dudler*, 231

8    Cal. App. 3d 190, 198 (1991) (advertisement promising "reverence for customs and

9    observances in strict accord with family wishes" was too general to create implied

10   contract to allow portraits on gravestones).

11        *Second*, even if that advertisement did reflect a contract term (it does not),

12   nothing in the statement Plaintiffs quote constitutes a promise that Occidental will

13   conduct classes in-person under all circumstances, even during a national

14   emergency—the truthful description of the campus and statement that it is located

15   in Los Angeles is not a promise (contractual or otherwise) concerning the method

16   of delivering instruction to Occidental students.  Indeed, it is black letter law that a

17   reference to one attribute of a product or service in an advertisement is not a

18   *guarantee* that the attribute will always be available (or function correctly) in all

19   possible circumstances.  So, for example, advertisements describing Apple's "Siri"

20   electronic assistant as a "breakthrough" and "intelligent" product that "understands

21   what you mean" do not "expressly indicate[] that Siri would be able to answer

22   every question, or do so consistently." *In re Iphone 4S Consumer Litig.*, 2014 WL

23   589388, at *6-7 (N.D. Cal. Feb. 14, 2014), *aff'd*, 637 F. App'x 414 (9th Cir. 2016).

24   Nor are statements about the features of a product or service promises that those

25   features will always be available and will never malfunction.  *See Long v. Hewlett-*

26   *Packard Co.*, 2007 WL 2994812, at *6 (N.D. Cal. July 27, 2007) (product

27   description "does not constitute a representation regarding the quality of the

28   [product]" or "the consistent or longevity of [its] operation".)  Thus, the lack of any

11

specific contractual promise that Occidental would not even temporarily conduct classes remotely is fatal to both of Plaintiffs' breach of contract claims. *See Telluselle v. Hawaii Pac. Univ.*, 528 Fed. App'x 739, 739 (9th Cir. 2013) (dismissing contract claim where "[student] failed to raise a genuine dispute of material fact as to whether the parties entered into an express or implied contract in which defendants made promises . . .").

Finally, Plaintiffs point to Occidental's Class Attendance Policy and Plaintiff Chloe Lindner's course schedule and syllabi as evidence of the "in-person nature of Spring Semester 2020 course offerings." FAC ¶¶ 4-6. These materials, however, do not *promise* in-person instruction. The Attendance Policy merely states that "[r]egular class attendance is expected of all students." *Id.* ¶ 7. The transition to remote learning is consistent with this requirement; though instruction is now virtual, students are still expected to attend class via videoconference. Nor can the designation of room assignments on Chloe Lindner's schedule and class syllabi reasonably be construed as a promise that courses will always meet in a specific place. If Plaintiffs' theory were valid, students could sue Occidental for changes in room assignments or instructors, or even a professor's decision to teach a seminar outside in good weather. Allowing such lawsuits runs contrary to the discretion Occidental retains (and California law affords colleges) to change its curriculum and academic programs as they see fit. *See Raiser v. Ventura Coll. of Law*, 488 Fed. App'x 219, 222 (9th Cir. 2012) (rejecting claim over "[plaintiff']'s removal from a class and the revision of his curriculum because the curriculum agreement attached to the first amended complaint . . . does not prohibit changing his curriculum.").

> 2.   *The Contract on Which the FAC Is Based Expressly Reserves Occidental's Right to Modify Its Programs.*

Next, the contractual material at issue (and on which the FAC relies) expressly reserve Occidental's right to modify its programs, including in response

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS FAC, 2:20-CV-08481-JFW-RAO

1  to (as is the case here) a "national emergency."  Ex. A.  In other words, Plaintiffs'

2  contract claims fail because the *actual* terms of the contract gave Occidental the

3  right to take the actions that it did.

4      When considering students' breach of contract claims against colleges and

5  universities, courts regularly refer to course catalogs as a source of the terms of the

6  contractual relationship.  *Zumbrun*, 25 Cal. App. 3d at 10; *see also Gibson v.*

7  *Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 n.1 (2014) (considering student

8  handbook when dismissing plaintiff's breach of contract claim) (quoting *Swartz v.*

9  *KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)); *Doe v. Vanderbilt Univ.*, 2019 WL

10 4748310, at *6 (M.D. Tenn. Sept. 30, 2019) (handbook "integral to Plaintiff's

11 claims" can be considered "in its entirety for purposes of the pending motion to

12 dismiss"); *Dasrath v. Ross Univ. Sch. of Med.*, 2008 WL 11438041, at *1 n.2

13 (E.D.N.Y. Aug. 06, 2008) (handbook properly considered when ruling on motion to

14 dismiss because plaintiff "relies upon the existence of a contractual agreement to

15 support his breach-of-contract claim" and because "the Handbook is readily

16 available on the Internet").

17     Here, the relevant 2019 Occidental course catalog plainly states that the

18 College "reserves the right to change fees, modify its services, or change its

19 program should economic conditions or national emergency make it necessary to do

20 so" and the cover specifies that "[f]ees, tuition, programs, courses, course content,

21 instructors, and regulations are subject to change without notice."  Ex. A (emphasis

22 added).  No one reviewing these provisions could conclude[3] that Occidental made a

23 contractual promise to provide on-campus instruction under all circumstances, even

24 in the midst of a "national emergency" such as the current public health crisis that,

25

26 [3] The obligations set forth in these materials must be given their "reasonable"

27 interpretation.  *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 829

(2007) ("The contractual obligations imposed by the language in catalogues

28 'centers around what is reasonable.'").

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS FAC, 2:20-CV-08481-JFW-RAO

1    among other things, has prevented Occidental from providing in-person instruction

2    and dramatically impacted Occidental's budget.  *See Searle v. Regents of Univ. of*

3    *Cal.*, 23 Cal. App. 3d 448, 452 (1972) ("[T]he regents' specific reservation of

4    authority would also have been a condition of any contract with either faculty or

5    students …."); *Gourdine v. Felician Coll.*, 2006 WL 2346278, at *4 (N.J. Super. Ct.

6    App. Div. Aug. 15, 2006) (unpublished) ("To the extent that plaintiffs seek to

7    enforce a contractual right against defendants, that contract includes the college

8    catalog's reservation of rights to alter or to eliminate the program in which they

9    were enrolled."); *Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158,

10   at *6 (S.D.N.Y. Apr. 15, 2004) ("Where there is 'a sufficiently unambiguous

11   disclaimer, conspicuously placed in the employee handbook such that the employee

12   reasonably could be expected to read it,' an implied contract claim may be

13   dismissed as a matter of law.").

14          3.     *Plaintiffs May Not Infer a Promise of In-Person Education in*

15                   *All Circumstances, Including During a National Emergency.*

16        Plaintiffs' breach of implied contract claim is premised on Occidental's

17   "usual and customer practice of providing on-campus courses."  FAC ¶ 83.  But

18   there is no reason for the Court to attempt to infer the terms of an implied

19   agreement where, as here, there is a written contract on point.  *Cf. Lance Camper*

20   *Mfg. Corp. v. Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (1996) ("[I]t is

21   well settled that an action based on an implied-in-fact or quasi-contract cannot lie

22   where there exists between the parties a valid express contract covering the same

23   subject matter.").  And, in any event, as a matter of law, terms that conflict with

24   express contract provisions cannot be implied.  *Kucharczyk v. Regents of Univ. of*

25   *Cal.*, 946 F. Supp. 1419, 1432 (N.D. Cal. 1996) ("[T]erms that conflict with an

26   express written contract cannot be implied in a written contract.").

27        While "usual or customary practice" can clarify the terms of a contract, it

28   cannot override them.  *IV Solutions, Inc. v. United Healthcare Services, Inc.*, 2014

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS FAC, 2:20-CV-08481-JFW-RAO

1   WL 6896023, at *3 ("[C]ustom and practice can be admitted to explain or clarify

2   the agreement, but not to contradict its terms"); *see also Dea v. Davy*, 150 Cal.

3   App. 2d 435, 437 (1957) (holding that contract language prevails over conflicting

4   custom and usage).  And, as previously explained, the 2019 Catalog expressly

5   reserves the College's authority to modify its programs, including under the exact

6   circumstances presented by the COVID-19 pandemic.  Ex. A ("national

7   emergency").

8          Even if the 2019 Catalog did not expressly grant Occidental broad discretion

9   to alter the format of its educational offerings (which it does), California law would

10  still afford the College discretion to do so.  *See supra* at 6-9.  Plaintiffs demand, in

11  essence, that the Court overwrite express provisions in Occidental's contract with

12  its student by implying terms that remove the discretion that the College needs—

13  and possesses as a matter of California law—to adapt its programs in response to

14  new challenges and circumstances.  Unsurprisingly, the law does not support that

15  position.  *See Wong v. Regents of Univ. of Cal.*, 15 Cal. App. 3d 823, 830 (1971)

16  ("[C]ourts do not interfere with the management of a school's internal affairs unless

17  there has been a manifest abuse of discretion or where (the school officials') action

18  has been arbitrary or unlawful") (internal quotations omitted); *see also Paulsen*, 25

19  Cal. 3d at 808 (courts will not intervene in the academic affairs of schools unless

20  the school acted arbitrarily or in bad faith); *Banks v. Dominican Coll.*, 35 Cal. App.

21  4th 1545, 1551 (1995) ("We may only overturn the university's decision if we find

22  it to be arbitrary and capricious, not based upon academic criteria, and the result of

23  irrelevant or discriminatory factors").

24         Next, while a contract may be implied in fact, "[a]n implied contract . . . in

25  no less degree than an express contract, must be founded upon an ascertained

26  agreement of the parties to perform it, the substantial difference between the two

27  being the mere mode of proof by which they are to be respectively established."

28  *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1507 (2012) (internal

15

quotations omitted).  And here, Plaintiffs' allegation that Occidental's "usual and customary practice"—unlike that of Western Governors University, Southern New Hampshire University, and the University of Phoenix-Arizona—is to provide on-campus courses, FAC ¶¶ 30, 31, & 83, does not suffice.  The fact that Occidental provides in-person instruction "under ordinary circumstances," *id.* ¶ 31, has no bearing on whether Occidental promised to do so in the extraordinary circumstances created by the COVID-19 pandemic.[4]  As the Court explained in *Charpentier v. Los Angeles Rams Football Co., Inc.*, 75 Cal. App. 4th 301, 308 (1999), "[j]ust because a team has played for years in a particular location and has always done something a particular way does not mean that it must always do so." The plaintiff there alleged that the Los Angeles Rams Football Company "breached [an] implied contract when it announced its intention to discontinue playing games in the greater Los Angeles area" and to relocate to St. Louis.  *Id.* (internal quotations and alterations omitted).  The court affirmed the dismissal of the plaintiff's contract claim, holding that "[p]laintiff cannot reasonably claim the moving of the team itself broke any promise."  *Id.*  As in *Charpentier*, it is unreasonable to infer here that just because Occidental usually provides in-person instruction it impliedly "promised" to always do so even during a national emergency.  *See id.*; *cf. Paynter v. NYU*, 319 N.Y.S.2d 893, 894 (1971) (reversing tuition refund where ordinary class schedule was suspended due to anti-war protests).

Absent any specific promise to continue on-campus instruction notwithstanding an unprecedented global pandemic, California law precludes Plaintiffs from inferring an obligation to do so.

---

[4] Plaintiffs' attempt to equate an Occidental degree with certificates or degrees from Western Governors University, Southern New Hampshire University, or the University of Phoenix-Arizona is baseless.  As Plaintiffs acknowledge, unlike those schools Occidental is a highly-selective liberal arts college with courses taught by "exceptional faculty."  FAC ¶ 32.

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS FAC, 2:20-CV-08481-JFW-RAO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.** **Plaintiffs' Unjust Enrichment, Conversion, and Money Had and Received Claims Fail.**

    1.    *Plaintiffs Cannot Assert Claims for Unjust Enrichment, Conversion, and Money Had and Received Predicated on a Breach of Contract.*

Next, no claim for unjust enrichment, conversion, or money had and received lies where, as here, the parties' relationship is governed by contract. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 2007) (an action for unjust enrichment "does not lie when an enforceable, binding agreement exists defining the rights of the parties"); *Wynne Sys., Inc. v. Mobile Storage Grp., Inc.*, 2010 WL 11595726, *7 (C.D. Cal. May 5, 2010) (rejecting conversion claim because "courts turn to the economic loss rule to bar conversion claims that are based solely on breaches of contractual duties"); *Rhodeman v. Ocwen Loan Servicing, LLC*, 2020 WL 4727289, at *5 (C.D. Cal. July 30, 2020) ( "Plaintiff cannot pursue both a breach of contract theory and a money had and received theory where her allegations fail to establish a 'total failure of consideration.'"). "While generally parties are permitted to plead in the alternative, the allegation of binding contracts nullifies the unjust enrichment claim."[5] *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012) (quotation omitted) (quoting and affirming trial court dismissal); *see also Chong*, 2020 WL 5847626, at *4

_____

[5] Plaintiff's "unjust enrichment" claim must also be dismissed because "unjust enrichment" is not an independent cause of action under California law. *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Unjust enrichment is not a cause of action."); *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010) (same); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) (same); *see Sotelo v. Rawlings Sporting Goods Co.*, 2019 WL 4392528, at *8 (C.D. Cal. May 8, 2019) (dismissing unjust enrichment claim "under California law . . . because it cannot serve as a standalone claim for relief"); *Freedline v. O Organics LLC*, 2020 WL 1643697, at *4 (N.D. Cal. Mar. 31, 2020) (same).

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS FAC, 2:20-CV-08481-JFW-RAO

(dismissing unjust enrichment claim against university).  The same is true for conversion and money had and received claims.  *Advanced Riggers & Millwrights, LLC v. Hoist Liftruck MFG, Inc.*, 2015 WL 12860470, at *7 (C.D. Cal. Oct. 29, 2015); *Rhodeman*, 2020 WL 4727289, at *5.  Plaintiffs' tort claims thus fail because they: (i) rest on Occidental's purported failure to perform obligations under the agreement that Plaintiffs entered into when they paid tuition; and (ii) are barred by the economic loss rule because they seek to recover for an economic injury—*i.e.*, tuition and fees.  *See* FAC ¶¶ 91-106.

Moreover, even if Plaintiffs could bring these kinds of claims based on an alleged breach of contract (they cannot) they must still be dismissed because Plaintiffs have not pleaded (and cannot plead) that Occidental's decision to transition to remote learning contravened any duty it owed to its students.  Occidental's decision to switch to remote learning in response to the COVID-19 pandemic was well within the discretion to adapt curricula that the College is afforded by its own course materials and by California law.  *See supra* at 6-8 & 12-14.  Thus, for the same reason that Plaintiffs failed to state a claim for breach of contract, their unjust enrichment and conversion claims also fail.  *See Miller v. Loyola Univ. of New Orleans*, 829 So. 2d 1057, 1061-62 (La. Ct. App. 2002) (dismissing unjust enrichment claim because student received instruction and credit); *Wright v. Capella Univ., Inc.*, 378 F. Supp. 3d 760, 775 (D. Minn. 2019) (dismissing unjust enrichment claim where plaintiff received instruction); *Sonoiki v. Harvard Univ.*, 2020 WL 3416516, at *15 (D. Mass. June 22, 2020) (dismissing quasi-contract claim based on breach of student handbook where no breach occurred), *appeal docketed* No. 20-1689 (1st Cir. July 16, 2020); *Neelon v. Krueger*, 2015 WL 4647931, at *6 (D. Mass. Aug. 5, 2015) (conversion element not satisfied where actions in accordance with contract "not wrongful"); *Rhodeman*, 2020 WL 4727289, at *5 n.3 (money had and received claim fails where plaintiff received "something of value in exchange for her payments").

2.    *Plaintiffs' Conversion and Money Had and Received Claims Also Fail for Additional Reasons.*

Plaintiffs' conversion and money had and received claims also fail because Plaintiffs do not seek to recover tangible property or allege Occidental is indebted to them in a certain sum, and their conversion claim fails for the additional reason that Plaintiffs made no demand to Occidental for the return of allegedly converted property before filing the FAC.

In California, "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil, & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007); *see also In re Bailey*, 197 F.3d 997, 1000-01 (9th Cir. 1999) (attorney's use of another attorney's share of settlement funds did not constitute conversion); *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 231 (1997) (claim that defendant converted "approximately $1.4 million" and "approximately $120,000" insufficient as a matter of law).  Accordingly, "California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled or misapplied specific funds held for the benefit of others." *PCO, Inc.*, 150 Cal. App. 4th at 396.

But here, Plaintiffs' tuition and fees are fungible amounts that cannot be "identified as a specific thing." *Id.* at 395.  Plaintiffs have not alleged that they gave Occidental earmarked bills that it was supposed to hold in trust—rather, they claim that they used fungible money to pay for *services*, some of which have been rendered and some of which they contend were not provided.  The *value* of six weeks of in-person instruction is not an "identifiable sum," and Plaintiffs' conversion claim therefore fails as a matter of law.  *Id.*

Plaintiffs' money had and received claim also fails because Occidental is not "indebted to the plaintiff[s] in a certain sum." *Farmers Ins. Exchange v. Zerin*, 53

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS FAC, 2:20-CV-08481-JFW-RAO

1  Cal. App. 4th 445, 460 (1998); *see also Walter v. Hughes Commc'ns, Inc.*, 682 F.
2  Supp. 2d 1031, 1048 (N.D. Cal. 2010).  Plaintiffs do not (and could not) contend
3  that *all* tuition payments should be refunded such that Occidental would be
4  providing education and progress towards a degree for free.  *See, e.g., Farmers Ins.*
5  *Exchange* at 460; *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011).

6      Plaintiffs' conversion claim must also be dismissed because Plaintiffs failed
7  to demand that Occidental return a portion of the tuition and fees paid before filing
8  this lawsuit.  Where, as here, the property alleged to have been converted was
9  initially acquired in a lawful manner, no conversion claim lies unless a plaintiff
10 establishes that he demanded the return of the property.  *Atwood v. S. Cal. Ice Co.*,
11 63 Cal. App. 343, 345 (1923) (disapproved on other grounds).  Because Plaintiffs
12 have made no such allegations, their conversion claim must be dismissed.

13     **D.    Plaintiff Steven Lindner Lacks Standing to Assert the Claims**
14             **Alleged.**

15     Finally, Plaintiff Steven Lindner's claims must also be dismissed because
16 Plaintiff Steven Lindner lacks standing.  A plaintiff must have standing as to each
17 claim and each form of relief sought.  *See Town of Chester, N.Y. v. Laroe Estates,*
18 *Inc.*, 137 S. Ct. 1645, 1650 (2017).  And to establish standing, he must "have
19 (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of
20 the defendant, and (3) that is likely to be redressed by a favorable judicial
21 decision." *Spokeo, Inc. v. Robins ("Spokeo I")*, 136 S. Ct. 1540, 1547 (2016).
22 Moreover, in making these showings, a plaintiff must rely on his own legal rights
23 and interests rather than those of others.  *See Constr. Indus. Ass'n of Sonoma Cty. v.*
24 *City of Petaluma*, 522 F.2d 897, 903 (9th Cir. 1975).  Plaintiff Steven Lindner lacks
25 standing because, unlike his daughter, he is not a party to any contract or quasi-
26 contract, has no legally cognizable relationship with the College, and has suffered
27 no injury that this lawsuit could redress.
28     *First*, to the extent Plaintiff Steven Lindner seeks to enforce a contract, it is a

MEMO. ISO OCCIDENTAL'S MOT. TO
DISMISS FAC, 2:20-CV-08481-JFW-RAO

contract to which he is not a party and under which he has no rights.  California law recognizes a contractual relationship between colleges and their students, not the parents.  *See Zumbrun*, 25 Cal. App. 3d at 10 (describing contractual relationship between "a student and a private university or college").  In fact, courts across the country have routinely held that parents lack standing to bring claims against their children's' colleges and universities, even when the parents pay tuition on behalf of their children.  *See, e.g.*, *Doe v. Univ. of the S.*, 687 F. Supp. 2d 744, 761 (E.D. Tenn. 2009) ("[i]t is fairly evident that the 'payment of tuition does not create a contractual relationship between parents and a college' when the parents' child is over the age of majority.") (quoting *Apffel v. Huddleston*, 50 F. Supp. 2d 1129, 1133 (D. Utah 1999)); *McCormick v. Dresdale*, 2010 WL 1740853, at *2 (D.R.I. Apr. 28, 2010) (dismissing parents' breach of contract claim against Brown University for lack of standing); *Runge v. Sanford*, 2009 WL 9083917, at *1 (D.S.C. Feb. 25, 2009) (plaintiff lacked standing to bring claim on behalf of adult children).  The Court should reach the same conclusion here: Plaintiff Steven Lindner's daughter attends Occidental, not Plaintiff Steven Lindner, and his daughter was the intended beneficiary of any promises that the College allegedly made.  Plaintiff Steven Lindner, on the other hand, does not and cannot establish that he has any right to enroll, receive academic credits, seek a refund, or enforce the substantive terms of his daughter's contractual relationship with Occidental.

*Second*, the "injury" (if any) that resulted from the transition to remote instruction was suffered by students, not their parents.  Here, "[Plaintiff Steven Lindner] ha[s] not alleged any separate and distinct denial of services to [him] apart from [his] role as parent[] of [a] child[] enrolled . . . in [Occidental's] programs." *Glass v. Hillsboro Sch. Dist. 1J*, 142 F. Supp. 2d 1286, 1292 (D. Or. 2001) (parents did not plead "independent and separate right to have access to the classroom for their own benefit").  Accordingly, Plaintiff Steven Lindner lacks standing.

MEMO. ISO OCCIDENTAL'S MOT. TO DISMISS FAC, 2:20-CV-08481-JFW-RAO

## CONCLUSION

For all of the foregoing reasons, the FAC should be dismissed with prejudice.

Dated:  November 17, 2020          O'MELVENY & MYERS LLP
                                   MATTHEW D. POWERS
                                   APALLA U. CHOPRA


                                   By:    /s/ Matthew D. Powers
                                                    Matthew D. Powers
                                   Attorneys for Defendant
                                   Occidental College